928 F.2d 404
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Russell L. DWYER and Patricia Dwyer, Plaintiffs-Appellants,
v.
CITY OF MIDDLETOWN, Ohio, Gary Kaup, Guy Stone, Mike Bruck,
Steve Schmidt, Ted Marsh, William Becker, Ronald V. Arsdale,
Darrell Salyers, Gary Shupe, Donnie Owens, William Burns,
Patricia Schaefer, Paul Lewis and James Moore, Defendants-Appellees.
 No. 90-3299.
 United States Court of Appeals, Sixth Circuit.
 March 18, 1991.
 
 On Appeal from the United States District Court for the Southern District of Ohio, No. 88-60529; Spiegel, J.
 S.D.Ohio
 AFFIRMED.
 Before MERRITT, Chief Judge and KENNEDY and NATHANIEL R. JONES, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiffs-appellants Russell and Patricia Dwyer, husband and wife, appeal the District Court's grant of summary judgment for all defendants in this action under 42 U.S.C. Sec. 1983 in connection with their separation of employment from the Middletown, Ohio police department. For the reasons that follow, the order of the District Court is AFFIRMED.
 
 I.
 
 2
 Plaintiff Russell Dwyer was the Chief of Police of Middletown, Ohio. In May 1987 an investigation of Dwyer was initiated by the then City Manager, defendant William Burns. This investigation, conducted by several of the other individual defendants, centered on allegations of sexual misconduct committed by Dwyer. On June 15, 1987, Dwyer was suspended and formal charges were lodged against him. On the same date Dwyer's office was allegedly searched and items of City property and personal property were seized, without permission from Dwyer. Also on June 15, 1987, plaintiff Patricia Dwyer, at that time a Middletown police officer, was sent home from work on administrative leave. After that date she reported in sick and did not report to work again before her resignation on July 4, 1987.
 
 
 3
 On June 18, 1987, Russell Dwyer filed a complaint in the Butler County Common Pleas Court. In that complaint, which named Burns and the City as defendants, Dwyer sought to be apprised of specific evidence to be used against him in a predisciplinary hearing and to obtain an impartial arbitrator at that hearing. On July 2, 1987, before the predisciplinary hearing, Dwyer, while represented by legal counsel, negotiated and executed a Settlement Agreement with the City. The most important provision of that Agreement, for purposes of this case, is a release of liability "from all claims, which can or may ever be asserted as a result of the transactions or controversy that has existed between the parties or the effects or consequences therefore." Appellees' Brief at 3. The Agreement provided that Dwyer would resign from his position as Chief of Police on October 31, 1987. Among the other terms of the Agreement were provisions that the City would withdraw any and all charges previously filed against Dwyer and pay him a $10,000 lump sum in addition to his regular salary. Dwyer also agreed to dismiss his June 18, 1987 lawsuit and the City agreed to permit Dwyer's wife, Patricia Dwyer, to continue her employment as a City police officer.
 
 
 4
 On October 2, 1987, Dwyer filed a complaint in mandamus against the City of Middletown. In that action Dwyer alleged the City breached the July 2, 1987 Settlement Agreement and moved the court to restore Dwyer to his position as Chief of Police. The trial court denied Dwyer's request and the Ohio Court of Appeals upheld that decision. The Court of Appeals ruled, inter alia, that: (1) Dwyer is clearly not entitled to be reinstated as the City's Chief of Police; (2) the provision in the Settlement Agreement protecting Patricia Dwyer's employment status with the City is illegal and unenforceable; and (3) the contract, including the release of liability, is valid and enforceable. The Ohio Supreme Court refused to hear an appeal.
 
 
 5
 On June 13, 1988, plaintiffs brought this action under 42 U.S.C. Sec. 1983 claiming that the actions of the City of Middletown and fourteen individual defendants were under color of law and violated their constitutional rights. Because plaintiffs do not state the specific statutory or constitutional guarantees allegedly violated, the court must reconstruct them. Indeed, the District Court had trouble in this respect, ordering the defendants to brief that court on whether the plaintiffs' claims were properly brought pursuant to section 1983. Based on the complaint and the briefs, it appears that Russell Dwyer alleges that one or more of the individual defendants illegally searched Dwyer's office and his suspension violated his right to continued public employment. The only allegation of a constitutional or statutory nature that we can discern from that part of the record concerning Patricia Dwyer is that she was constructively discharged from her position as a Middletown police officer without due process. Other allegations made by the plaintiffs, such as defamation, are clearly not of a constitutional or statutory nature and so are not cognizable in a section 1983 action.
 
 
 6
 The defendants filed motions for summary judgment. Following several rounds of briefing, the District Court granted the motions of all the defendants on March 2, 1990, and dismissed plaintiffs' complaint. Plaintiffs filed this timely appeal.
 
 II.
 
 7
 We review a grant of summary judgment de novo. McKee v. Cutter Laboratories, 866 F.2d 219, 220 (6th Cir.1989). Summary judgment is appropriate only where the moving party has carried its burden of showing that the pleadings, depositions, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial. Fed.R.Civ.P. 56(c). In examining the record to determine whether a genuine issue of material fact exists, we must review all evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
 
 
 8
 A party bearing the burden of proof at trial may not evade its obligation to adduce evidence by "simply show[ing] that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " Id. at 587 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).
 
 III.
 A. Russell Dwyer
 
 9
 The District Court found that the Settlement Agreement executed by Russell Dwyer contained a valid release of the claims he is attempting to assert here. A general release knowingly and voluntarily made will be enforced as a waiver of section 1983 claims. Town of Newton v. Rumery, 480 U.S. 386, 397-98 (1987); Leaman v. Ohio Dept. of Mental Retardation, 825 F.2d 946 (6th Cir.1987) (en banc), cert. denied, 487 U.S. 1204 (1988). The Settlement Agreement executed by Russell Dwyer, along with the release of liability contained therein, have already been held to be valid and enforceable by the Ohio courts and the District Court below. Dwyer does not contest that finding here. Instead, Russell Dwyer asserts that he did not actually release the individual defendants.
 
 
 10
 The release provision in the Settlement Agreement executed by Russell Dwyer on July 2, 1987, reads as follows:
 
 
 11
 4. The employee ... does hereby release and forever discharge the City and its agents, from all claims, demands, damages, actions and causes of action whatsoever, past, present or future which can or may ever be asserted, as a result of the transactions or controversy that has existed between the parties or the effects or consequences thereof. (Emphasis added.)
 
 
 12
 The emphasized phrase, "and its agents," was handwritten into the margin of the otherwise typed Agreement. The addition was neither initialed nor dated.
 
 
 13
 Initially, we find that the release, if knowingly and voluntarily made, would act to preclude any section 1983 claims against the City and all the defendants who were employees/agents of the City for alleged violations occurring prior to July 2, 1987. Indeed, Russell Dwyer does not appeal the grant of summary judgment in favor of the City of Middletown. He resists summary judgment against the individual defendants by asserting that there is a genuine factual dispute over whether the phrase "and its agents" was contained in the Settlement Agreement he executed.
 
 
 14
 Dwyer submitted an affidavit to the District Court contesting the fact that he had knowledge of, or authorized the inclusion of, the words "and its agents" in the release clause of the Settlement Agreement. Nevertheless, the District Court found that the overwhelming evidence refuted that contention, including prior sworn testimony of Dwyer himself, and that no genuine dispute existed on this crucial issue. We agree with the District Court.
 
 
 15
 In his mandamus action in the Common Pleas Court of Butler County, Ohio, in which the validity of the Settlement Agreement was litigated, Russell Dwyer testified under oath that he had signed the Agreement containing the handwritten words "and its agents." He further testified that before signing the Settlement Agreement his then attorney, now a state court judge, did a "good job of explaining the document" to him. An issue of material fact may not be created by a party simply by offering an affidavit which contradicts, without explanation, that party's earlier sworn testimony. See Van T. Junkins & Assocs. v. U.S. Indus., 736 F.2d 656, 657 (11th Cir.1984). In addition, the deposition testimony of his former attorney confirms that Mr. Dwyer had authorized the release of the individual City employees and was aware that the release provisions included the individual defendants.
 
 
 16
 Russell Dwyer's own sworn testimony and the deposition testimony of his attorney that Dwyer signed the Agreement containing the release of the City of Middletown and its agents precludes the existence of a material fact on this issue. Further, the uncontroverted record also indicates that Dwyer, in releasing the City "and its agents," knew and understood that to mean that he was releasing the City's employees. This precludes the existence of any genuine issue that the Settlement Agreement failed to release claims against the individual defendants who were employees/agents of the City of Middletown.
 
 
 17
 The City employee defendants argue several other grounds for affirming the grant of summary judgment, including collateral estoppel in connection with the judgment of the Ohio Court of Appeals and qualified immunity. Because we agree with the District Court that Dwyer knowingly and voluntarily waived his section 1983 claims against the City and its employees/agents, we need not address those arguments.
 
 
 18
 It is axiomatic that a section 1983 claim must show that defendants acted under color of state law and that defendants deprived the plaintiff of a federal right, either statutory or constitutional. Two of the defendants, Paul Lewis and Darrell Salyers, were not employees of Middletown at the time of the alleged constitutional violations. The District Court granted summary judgment for Lewis and Salyers on the basis that since they were not City servants they were not acting under color of state law, or alternatively, if they were acting as agents of the City then the release executed by Russell Dwyer waived any action against them. In light of our conclusion above regarding the effect of the release of claims, any actions founded on activities taken by Lewis or Salyers prior to July 2, 1987, were released if they were acting under color of state law. Dwyer alleges that defendant Salyers defamed him after July 2, 1987. Even if this were true, however, this would constitute a defamation claim under Ohio law and not a violation of any federal right. The District Court correctly granted summary judgment for defendants Lewis and Salyers.
 
 B. Patricia Dwyer
 
 19
 Patricia Dwyer's section 1983 claim alleges that she was constructively discharged from her position as a Middletown police officer without due process. The District Court granted summary judgment for all defendants, finding that the undisputed facts could not establish a cognizable constructive discharge claim.
 
 
 20
 Initially, we question whether constructive discharge gives rise to a procedural due process claim. Patricia Dwyer fails to identify what process was due. The District Court dismissed, however, on the basis that there had been no constructive discharge. We agree. To show that she was constructively discharged, Patricia Dwyer was required to show: (1) that working conditions were so intolerable that a reasonable person would have felt compelled to resign, and (2) that a reasonable employer would have foreseen that the employee would resign when faced with those working conditions. Wheeler v. Southland Corp., 875 F.2d 1246, 1249 (6th Cir.1989).
 
 
 21
 Patricia Dwyer alleges that on the morning of June 15, 1987, the day her husband was suspended, she saw a memorandum stating that she was transferred to the midnight shift under Sergeant Becker. Becker, she alleges, is one of the people who conspired to have her husband removed as Chief of Police. She claims that this assignment caused her to fear for her safety and that due to this assignment she felt compelled to resign. She never returned to work after June 15th and tendered her resignation letter on July 4, 1987. It is undisputed, however, that later on June 15, 1987, a memorandum addressed to all Middletown police personnel indicated that Patricia Dwyer had been temporarily assigned to the 7:00 a.m. to 3:00 p.m. shift under Sergeant Watson. It is also undisputed that on the next regularly scheduled shift change, effective June 28, 1987, Mrs. Dwyer was assigned to the 3:00 p.m. to 11:00 p.m. shift under Sergeant Curtis. There is no evidence that these assignments would constitute working conditions so intolerable that a reasonable person would have felt compelled to resign. Patricia Dwyer never reported to work after June 15 and she never contacted any official to protest her new assignment which she erroneously believed to be on the midnight shift under Sergeant Becker. Had she taken either of those steps she would have learned what her actual assignment was. Given these facts, we agree with the District Court that Patricia Dwyer has not adduced evidence which would allow a jury to find that either prong of the Wheeler test has been met.
 
 IV.
 
 22
 Accordingly, the District Court's grant of summary judgment in favor of all the defendants is AFFIRMED.