Raymond NEWTON, Plaintiff,

v.

**MEIJER STORES LIMITED PARTNERSHIP, Defendant.**

No. 3:03 CV 7509.

United States District Court, N.D. Ohio, Western Division.

Dec. 8, 2004.

Lafe E. Tolliver, Toledo, OH, for Plaintiff.

Gregory T. Lodge, Shumaker, Loop & Kendrick North Courthouse Square, Toledo, OH, Jeffrey S. Rueble, Meijer, Inc., Stacie R. Behler, Meijer–Legal Department, Grand Rapids, MI, for Defendant.

### MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on the motion of Defendant, Meijer Stores Limited Partnership ("Meijer"), for summary judgment (Doc. No. 37). The Plaintiff, Raymond Newton ("Newton"), has filed a response (Doc. No. 47), and Meijer has filed a reply (Doc. No. 48). This Court has jurisdiction under 28 U.S.C. § 1331. For the following reasons, Defendant's motion for summary judgment is granted.

#### BACKGROUND

Meijer, a Midwestern retailer, operates distribution facilities that serve its "supercenter" stores. In late August of 1999, Newton submitted an application for employment at the Meijer Distribution Facili-

ty in Newport, Michigan. That application asked the question, "Have you ever been convicted of a crime?" Newton admits that in response to this question he marked "no," and left blank the space next to the instruction, "If yes, list dates and details." (Doc. No. 37 Exs. A1, B.) The application also included the following:

I acknowledge that the facts set forth on this application are true and complete. I understand that if employed, any false statement or omission on this application or any attachment shall be sufficient cause for dismissal....

. . . . .

I authorize Meijer to use its personnel or any investigative agency to investigate my employment record, education, criminal conviction record and financial record....

(Doc. No. 37, Ex. A1.) Newton admits he signed the application.

Meijer hired Newton on September 7, 1999, to work as a produce warehouse clerk. At the same time, Newton became a member of the United Food and Commercial Workers of America, Local 951. As a union member, his employment with Meijer was governed by a Collective Bargaining Agreement ("CBA") with Local 951.

On November 13, 2000, Newton left his shift early and was terminated for "walking off the job." Newton filed a grievance through the procedure set forth in the CBA. In response to the grievance, Meijer agreed to reinstate Newton, and on March 2, 2001 Newton signed a release, whereby he agreed:

Grievant is to be reinstated with full seniority and no back pay. Time off received will be converted over to as for disciplinary reasons, along with a P.I. placed in Employee's file as complete and full settlement of my grievance or

problem dated 11–21–00, alleging a violation of Article 5.8—Walking Off the Job. A Local 951 representative has fully explained all of the alternatives to me, including potential arbitration and I have willingly and freely accepted the above specified settlement. I further agree to waive any further action against my employer as it related to the above listed matter. I hereby state that Local 951 has fully and fairly represented me in this matter to the best of my knowledge and I have knowingly waived any arbitration or further proceedings of such claims and/or grievances.

(Doc. No. 37, Ex. A5.) Newton was reinstated immediately.

On April 8, 2001, Newton filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming his November 13, 2000 termination for walking off the job violated Title VII of the Civil Rights Act of 1964 ("Title VII"), because similarly situated white employees were not terminated. The EEOC issued a right to sue letter on June 19, 2001. To date, Newton has not initiated a lawsuit alleging a violation of Title VII.

On July 10, 2001, Newton asked to review his Meijer personnel file. His request form was sent to Meijer's corporate offices, which ordered his supervisor to review the file and copy it for Newton. When he reviewed the file, Newton's supervisor, Daniel Scherer, noticed that Newton had indicated on his application that he had not been convicted of a crime. (Doc. No. 44, ¶ 7.) Mr. Scherer, in his affidavit, claims he had been previously informed that Newton had been convicted of a crime, so he contacted a Meijer "loss prevention" employee to conduct a criminal conviction record check. *Id.* at ¶¶ 8–9.

Newton's criminal record revealed that, prior to completing his Meijer application, he had several times been convicted of

domestic violence, DUI, and disorderly conduct. Newton admits to at least seven convictions, to serving three days in a county jail, and to having been sentenced to three days in a DWI program, ninety days probation for one conviction, one year probation for another, and thirty days, twenty-one of which he claims were suspended, in a correctional facility for yet another. After learning of Newton's criminal history, Meijer terminated him on September 10, 2001.

The decision to terminate Newton was made jointly by Matthew Jamrog, Meijer's Labor Relations Manager in charge of Human Resources for the Newport Distribution Facility, and Michael Franceus, the Director of the Newport facility. (Doc. No. 41, ¶¶ 1, 9; Doc. No. 42, ¶¶ 1, 6.) Meijer has submitted sworn affidavits in which both men state that Newton was terminated solely for falsifying his application, and that at the time they decided to terminate him, they were not aware of or had no recollection that Newton had filed an EEOC charge in April, 2001. (Doc. No. 41, ¶¶ 8, 11; Doc. No. 42, ¶¶ 5, 8, 10.) Jamrong and Franceus additionally state that in their employment with Meijer, they have also terminated white employees for falsifying employment applications or other company documents. (Doc. No. 41, ¶ 12; Doc. No. 42, ¶ 9). Newton filed a second charge with the EEOC on October 8, 2001, claiming he was discharged in retaliation for filing his previous charge.

Newton filed the instant lawsuit on August 29, 2003. His complaint states that he brings suit under 42 U.S.C. § 1981 and alleges that his November 2000 discharge for walking off the job was racially discriminatory, that he experienced "numerous job harassment's [sic]," and that he was ultimately fired in retaliation for filing an EEOC charge. Meijer has moved for summary judgment.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323–25, 106 S.Ct. 2548. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* FED.R.CIV.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d

800, 802 (6th Cir.2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

■ "In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." ·*Williams v. Belknap*, 154 F.Supp.2d 1069, 1071 (E.D.Mich.2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987)). However, " 'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,' " *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir.1994) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505); therefore, "[t]he Court is not required or permitted ... to judge the evidence or make findings of fact." *Williams*, 154 F.Supp.2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F.Supp.2d 928, 930 (S.D.Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir.2000).

*B. Newton's November, 2000 Termination*

■ In paragraphs two and three of his complaint,[1] Newton makes claims relating to his November, 2000 termination for walking off the job. Specifically, Newton claims white employees who also walked off the job during the same alleged "wildcat strike" were not terminated, and that when he was reinstated after complaining about this, it was without back pay and other lost benefits. Meijer moves for summary judgment on Newton's paragraph two and three claims, on the grounds that Newton waived them in the March, 2001 release.

The Sixth Circuit has upheld the enforcement of general releases similar to the one at issue where they are knowingly and voluntarily made and unambiguously bar the lawsuit initiated. *Taggart v. United States*, 880 F.2d 867, 869 (6th Cir.1989) (holding that waiver signed while represented by counsel, after parking lot slip-and-fall accident in which ownership of accident site was unclear, releasing one landowner and anyone else who "may be jointly or severally liable," also released United States, which owned the adjoining property); *Dwyer v. City of Middletown*, No. 90–3299, 1991 WL 35140, *1, 1991 U.S.App. LEXIS 4791, at *6 (6th Cir. Mar. 18, 1991) (holding that waiver signed by terminated police chief releasing city "from all claims, which can or may ever be asserted as a result of the transactions and controversy that has existed between the parties or the effects or consequences therefore" was effective to waive § 1983 claims).

Here, Newton agreed "to waive any further action against my employer as it related to the above listed matter," which was designated as "my grievance or problem dated 11–21–00, alleging a violation of

---

1. Newton's complaint contains several sections, each with numbered paragraphs. All references to numbered paragraphs in Newton's complaint refer to those paragraphs in the section captioned "Cause of Action."

Article 5.8—Walking Off the Job." Newton further certified that "A Local 951 representative has fully explained all of the alternatives to me, including potential arbitration and I have willingly and freely accepted the above specified settlement.... Local 951 has fully and fairly represented me in this matter to the best of my knowledge and I have knowingly waived any arbitration or further proceedings of such claims and/or grievances."

This release, signed after a union representative explained to Newton his alternatives, unambiguously waives the claims Newton makes in paragraphs two and three of his complaint. Newton does not contest his execution of the release or argue, in response to Meijer's motion to dismiss, that it should not be enforced. Accordingly, as to Newton's paragraph two and three claims, arising out of his November, 2000 termination for walking off the job and his reinstatement without back pay, Meijer's motion for summary judgment is granted.

## C. Numerous Job Harassments

■ Meijer has moved for dismissal of Newton's entire complaint, including the allegations of harassment in paragraph five, specifically, "a white employee cursing him," "his forklift mysteriously [catching] fire," and "false accusations against him about he [sic] calling a woman out of her name [sic]." (Doc. No. 1, ¶5.). In its Motion for Summary Judgment, Meijer pointed out the absence of any evidence supporting these claims. (Doc. No. 37, p. 1.) Newton has failed to present any evidentiary material supporting his harassment claims, as he must to defeat Meijer's motion for summary judgment. Therefore, Meijer's motion for summary judgment as to Newton's job harassment claims is granted.

## D. Retaliation

■ The "meat" of Newton's complaint is his claim that he was retaliated against for filing an EEOC charge, in violation of 42 U.S.C. § 1981, which guarantees all persons the same right to make and enforce contracts as is enjoyed by white citizens. 42 U.S.C. § 1981(a). Employer retaliation claims brought under § 1981 are governed by the same burden-shifting analysis as are retaliation claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 464 (6th Cir.2001). Under that framework:

> [A] plaintiff must first establish a prima facie case by demonstrating that 1) the plaintiff engaged in [protected conduct]; 2) the exercise of the plaintiff's civil rights was known to the defendant; 3) the defendant thereafter undertook an employment action adverse to the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action.

*Virts v. Consol. Freightways Corp.*, 285 F.3d 508, 521 (6th Cir.2002). Summary judgment is appropriate where the plaintiff fails to present evidence on any one of the four prongs. *See Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir.2002). However:

> If the plaintiff demonstrates a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Once the defendant articulates its reason, the plaintiff, who bears the burden of persuasion throughout the entire process, must demonstrate that the proffered reason was a mere pretext for discrimination. The plaintiff may establish that the proffered reason was a mere pretext by showing that 1) the stated reason had no basis in fact; 2)

the stated reason was not the actual reason; or 3) the stated reason was insufficient to explain the defendant's action. "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."

*Virts,* 285 F.3d at 521 (internal citations omitted) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993) (emphasis in *St. Mary's* )).

 Meijer postulates that Newton cannot meet the first prima facie case requirement because the activity he claims was the impetus for Meijer's retaliation—the filing of an EEOC charge—is not protected by § 1981. In support of this argument, Meijer relies on *Choudhury v. Polytechnic Inst. of N.Y.,* 735 F.2d 38 (2d Cir. 1984). Meijer's reliance is misplaced for several reasons.

First, in *Choudhury,* the Second Circuit held that the plaintiff *could* proceed under § 1981 with a claim that he was retaliated against for alleging race discrimination in an EEOC charge. *Choudhury,* 735 F.2d at 40, 43–44. In the portion of the opinion Meijer focuses on, the *Choudhury* court contrasted the facts then at bar with a previous case, *Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), which held that the plaintiff could not assert under 42 U.S.C. § 1985 a claim of Title VII retaliation for alleging sex discrimination. *Id.* at 43. While it noted that the Supreme Court in *Novotny* "declined to permit a preexisting statute to support a retaliation claim based on a subsequently enacted statute, particularly one like Title VII, which itself proscribes retaliation," the *Choudhury* court permitted the race-based retaliation claim before it to proceed, reasoning that "[i]n our case § 1981

is being used to proscribe retaliation for asserting rights protected by § 1981 itself." *Choudhury,* 735 F.2d at 43. The court reasoned that "an employee who is punished for seeking *administrative* or judicial relief . . . has failed to secure that right to equal treatment which constitutes the fundamental promise of § 1981." *Id.* (emphasis added).

Second, 42 U.S.C. § 1981 was amended by the Civil Rights Act of 1991, which expands the definition of "make and enforce contracts" to include the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). After noting prior cases holding that retaliation claims were not cognizable under § 1981 and "reversing" [an] "award of damages in [an] employee's favor on a claim of retaliation for filing [an] EEOC discrimination charge," the amendment's legislative history indicated that the drafters' intent was to "restore rights to sue for such retaliatory conduct." H.R.Rep. No. 102–40, pt. 1, at 92 n. 92 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 630 n. 92. Several courts have relied on this legislative history in holding that claims of retaliation for filing an EEOC charge may be brought under § 1981. *See, e.g., Patterson v. Augat Wiring Sys., Inc.,* 944 F.Supp. 1509, 1520 (M.D.Ala. 1996); *Adams v. City of Chicago,* 865 F.Supp. 445, 446–47 (N.D.Ill.1994). Based on the foregoing, the Court concludes Newton may, under § 1981, claim he was retaliated against for filing an EEOC charge alleging race discrimination. Newton has met the first prong of the prima facie case of retaliation.

 Newton complains of two adverse employment actions, the investigation into his criminal background and his termination. An adverse employment ac-

tion is "a materially adverse change in the terms and conditions of . . . employment." *Hollins v. Atlantic Co.,* 188 F.3d 652, 662 (6th Cir.1999). Numerous Sixth Circuit cases have held that an investigation is not an adverse employment action. *Allen v. Mich. Dep't of Corr.,* 165 F.3d 405, 409–10 (6th Cir.1999) (holding that monitoring the plaintiff more closely than white employees were monitored did not amount to " 'materially adverse' change in [the plaintiff's] employment status or in the terms and conditions of his employment"); *Bivins v. U.S. Pipe & Foundry Co.,* 48 Fed. Appx. 570, 572 (6th Cir.2002) ("[M]ere investigations by an employer do not constitute adverse employment actions."). Here, Meijer's investigation of Newton's criminal record did not materially change the terms and conditions of his employment and does not constitute an adverse employment action. His termination, however, does. To satisfy the second requirement of the prima facie case, Newton must produce some evidence establishing that those individuals who made the decision to take the adverse employment action knew or were aware of his protected activity. *Mulhall v. Ashcroft,* 287 F.3d 543, 551–52 (6th Cir.2002); *Fenton v. HiSAN, Inc.,* 174 F.3d 827, 832 (6th Cir.1999) (holding, in a retaliation case based on Ohio discrimination law, which "depends on federal case law," that summary judgment in favor of defendant was appropriate where plaintiff had not "met her burden of showing that her protected activity was known to those who made the decision"). In *Mulhall,* the two employees who took the adverse employment action testified they were unaware of the protected activity— being listed as a witness in a coworker's EEO complaint—at the time they acted. *Mulhall,* 287 F.3d at 552. In response, the plaintiff challenged the credibility of those statements but produced no direct or circumstantial evidence to the contrary.

*Id.* The Sixth Circuit held summary judgment was appropriate because the plaintiff offered only "conspiratorial theories," and not "specific facts." *Id.*

In *Fenton,* the plaintiff met with a supervisor and the plant superintendent to complain about sexual harassment, and was changed from the "A shift" to the "B shift" later the same day. *Fenton,* 174 F.3d at 830. The employees who made the decision to transfer her, who were not the same ones she complained to about the harassment, claimed they had made the decision to transfer the plaintiff several days before her complaint. The Sixth Circuit found summary judgment was appropriate where the plaintiff was unable to produce any evidence that the decisionmakers knew of the complaints. *Id.* at 832.

█ Here, as in *Mulhall* and *Fenton,* Newton cannot meet the second requirement of the prima facie case for retaliation. In sworn affidavits, the Meijer employees who made the decision to terminate Newton averred that they were not aware of Newton's EEOC charge at the time they made their decision. Though Newton argues that "the employer clearly knew about the plaintiff's filed EEOC charge because they had to answer to it and provide details to the investigative team," (Doc. No. 47, p. 8.), he has presented no admissible evidence showing that Jamrog and Franceus themselves knew of his EEOC charge when they were making the decision to terminate him. Absent such "specific facts," summary judgment in favor of Meijer is appropriate.

Even if Newton could make out a prima facie case of retaliation, he has put forth nothing but his own theories to indicate that Meijer's articulated legitimate, nondiscriminatory reason for his termi-

nation—the falsification of his application—had no basis in fact, was not the actual reason, or was insufficient to explain Meijer's action. Summary judgment in favor of Meijer on Newton's retaliation claim shall be granted.

### E. Race Discrimination

 In its Motion for Summary Judgment, Meijer notes that Newton "does not actually seem to allege that he was discriminated [against] on the basis of race," yet Meijer argues that any claim of race discrimination fails because Newton cannot establish a prima facie case. The prima facie case for race discrimination requires Newton to show (1) that he was a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for his position; and (4) that he was replaced by a person who was not a member of the protected class or was treated differently from similarly situated employees outside the protected class. *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 728–29 (6th Cir.1999).

Newton has neither alleged nor presented any evidence showing that he was replaced by a person outside the protected class or was treated differently from similarly situated non-class members. Newton cannot meet the fourth requirement of the prima facie case. Therefore, as Meijer points out, any race discrimination claim asserted by Newton fails, and Meijer is entitled to summary judgment.

### CONCLUSION

Based on the foregoing, Meijer's Motion for Summary Judgment (Doc. No. 37) is granted.

IT IS SO ORDERED.

### JUDGMENT ENTRY

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Meijer's Motion for Summary Judgment (Doc. No. 37) is granted.