# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

MITCH MICHKOWSKI,       )       No. 71328-1-I

      )

      Appellant,       )

      )

      v.       )

      )

SNOHOMISH COUNTY,       )       UNPUBLISHED OPINION

      )

      Respondent.       )       FILED: February 17, 2015

      )

VERELLEN, J. — Mitch Michkowski, who was fired from his job at Snohomish County District Court (District Court), appeals the trial court's order of summary judgment dismissing his Washington Industrial Safety and Health Act (WISHA)[1] retaliatory discharge claim against the county. He contends that there were disputed issues of fact about whether the judges who voted to fire him knew that he had raised issues about bailiff safety before they decided to fire him. Because he fails to produce any evidence that the judges had such actual knowledge, he cannot establish a prima facie case of retaliatory discharge. Summary judgment was proper. We affirm.

## FACTS

On January 9, 2012, Michkowski began work in his new position as director of administration for Snohomish County District Court. Michkowski was hired by the eight judges who serve in the four divisions of Snohomish County District Court. The

---

[1] Ch. 49.17 RCW.

director's duties include preparing the District Court budget, managing the nonjudicial operations of the court, attending judges' meetings and otherwise acting under the direction of the District Court judges. The director serves at the pleasure of all of the District Court judges and is an at-will position.

On January 13, 2012, Michkowski attended his first judges' meeting. The judges discussed an advisory memorandum from the civil division of the Snohomish County Prosecuting Attorney's Office discussing safety and risk issues involving District Court bailiffs carrying firearms while performing their duties. That memorandum was issued on January 4, 2012, before Michkowski was hired, and was the result of an ongoing conversation between the judges and the civil division about the issue. The memorandum recommended that the District Court either discontinue the practice of allowing bailiffs to carry firearms or require them to obtain firearm certification and training. At the meeting, the judges adopted the recommendation to prohibit bailiffs from carrying firearms. Michkowski did not participate.

As director, Michkowski was responsible for submitting budget recommendations to the judges, preparing budget proposals as directed by the judges, preparing and presenting the budget approved by the judges to the county executive and county council, and informing the judges of the budget status throughout the year. As part of this process, the budget committee requires the director to draft "priority packages," which are requests to fund additional positions or programs for the coming fiscal year. The director is expected to prepare priority packages that reflect the bench's budgetary requests.

On June 19, 2012, the budget committee met and Michkowski presented his recommendation that the District Court request funding for a payroll, purchasing and accounting coordinator, and a trainer position for the 2013 fiscal year. The judges on the committee rejected his proposal and directed him instead to submit a budget priority package requesting funding for two legal process assistant positions.

On June 20, 2012, Michkowski e-mailed the budget committee and indicated that he was going to submit a priority package for an accounting coordinator position, as he had proposed. In a reply e-mail, Judge Ryan instructed him not to submit a priority package with this request because the committee had already rejected that proposal.

On July 3, 2012, Michkowski submitted the District Court budget to the county executive and included a priority package requesting an accounting coordinator in place of one of the legal process assistant positions requested by the judges. On July 5, 2012, after discovering what he had submitted, the judges immediately directed Michkowski to amend the submission to accurately reflect the decisions of the budget committee. He resubmitted a revised priority package for the two legal process assistant positions.

On July 13, 2012, Judges Ryan and Bui met with Michkowski to discuss his submission of the priority package with a request for an accounting coordinator when the budget committee had rejected this proposal. They also asked him if he misunderstood the judges' instructions. He said that he had not misunderstood, but offered no explanation for his actions. On July 27, 2012, Judge Bui issued a written reprimand to Michkowski about his performance on the budget submission. Michkowski

3

acknowledged receipt of the reprimand and stated he "wish[ed] to remain voiceless" about the content.[2]

Also in July 2012, Michkowski pursued a pilot project to bring an outside vendor, AllianceOne, into the south division of the District Court to act as a collection agent for fines imposed by the court. AllianceOne is a for-profit corporation that collects for other entities and acts on their behalf by filing contested matters in the District Court and appearing before the District Court judges. Judges Ryan and McRae objected to the AllianceOne project because they believed having a for-profit collection agency in the courthouse would affect the appearance of judicial impartiality. Judge McRae also had concerns that allowing on-site collections would violate a judicial ethics opinion relating to the lease of space by a for-profit entity on the same premises as a court. For these reasons, the judges of the south division voted against the proposal and told Michkowski not to pursue it.

On August 20, 2012, Judge Ryan and Judge Bui met with Michkowski to review a list of performance expectations. The judges reminded Michkowski that he needed to update presiding Judge Bui about his projects and activities. The judges also made clear that although Judge Bui supervised Michkowski, he worked for all of the judges and was responsible for following all of their directives. They further discussed Michkowski's budget duties, monitoring of court operations, and interactions with outside entities.

On August 21, 2012, Michkowski met with an AllianceOne representative and Lyndsey Downs, the deputy prosecuting attorney assigned to advise the District Court,

---

[2] Clerk's Papers (CP) at 504.

to discuss the collections project. Michkowski had not told Downs that the south division judges had already rejected the collections proposal. After the meeting, Downs contacted Judge Ryan and expressed concerns about the project. Judge Ryan was surprised to hear that Michkowski was still pursuing the project after the south division judges rejected his proposal, especially without first obtaining permission from Judge Bui to meet with Downs. Judge Ryan informed Judge Bui of what transpired, and on August 22, 2012, Judge Bui e-mailed Michkowski and instructed him to stop pursuing the collections project.

The next day, Michkowski presented Judge Bui with a memorandum addressing safety concerns related to bailiff duties to maintain order and security in the courtroom, lack of training for bailiffs to perform those duties, and potential liability for the court. Michkowski asked Judge Bui to initial a copy of the memorandum to acknowledge her receipt of it. Judge Bui declined to do so. Michkowski then sent Judge Bui the following e-mail and included the memorandum as an e-mail attachment:

Judge Bui,

Reflecting on our discussion earlier this afternoon regarding this topic (with regard to the document already being a public document by its very creation), I thought then that it might then make sense just to go ahead and send so that you'll have it electronically.

In any case, I look forward to bringing you potential solutions that you can consider implementing.

Thanks again,

Mitch[3]

---

3 CP at 516.

5

Judge Bui e-mailed back a terse response, stating:

> Perhaps you did not hear nor understand: I don't sign memos authored by you so that you can keep a record of it. That does not mean that you automatically place the document . . . in an email. Find your own record keeping procedure rather than relying on my signature.[4]

Judge Bui then forwarded to Judge Ryan the e-mail chain without the memorandum attachment.

In October 2012, Robert Veliz became the assistant director of District Court. Tensions arose between Veliz and Michkowski, and the judges became concerned with what they felt was an inappropriate amount of time Michkowski spent micromanaging Veliz. On October 17, 2012, Judges Goodwin and Bui met with Michkowski and Veliz about finding a way to work together.

Due to ongoing concerns about Michkowski's performance, the judges decided to discuss whether to continue his employment. In addition to the budget and collection project issues, the judges expressed their own frustrations with Michkowski's job performance, such as failing to deliver materials to judges meetings, exhibiting an arrogant and condescending manner toward judges, a controlling management style with the court staff, and pursuing projects they viewed as a waste of time (e.g., a photo gallery at the court) or that were not authorized (e.g., tracking affidavits of prejudice filed against the judges).

The judges set a special meeting for December 5, 2012. At that meeting, Judges Ryan, McRae, Goodwin, Lyon, Wisman and Clough voted to terminate Michkowski from his position. The two other judges, Judges Fisher and Bui, did not vote. Judge Fisher

---

[4] Id.

was absent and Judge Bui abstained from the vote. On December 7, 2012, Judge Goodwin informed Michkowski of his termination.

On December 13, 2012, Michkowski filed a complaint with the Department of Labor and Industries (L&I), alleging he had been terminated for raising workplace safety issues involving bailiffs. After an investigation, L&I issued a citation to the county for two safety-related violations for lack of training for bailiff duties involving safety risks. But L&I dismissed Michkowski's complaint, concluding that there was insufficient evidence to substantiate the allegations that he suffered discriminatory action as defined by WISHA. The L&I investigation concluded:

> Complainant alleged becoming the recipient of discriminatory action after reporting safety and health issues to the Employer.
>
> The Employer denied allegations of discrimination while insisting Complainant's termination stemmed from a variety of reasons, none relative to his engagement into a safety-protected activity.
>
> Investigation failed to produce sufficient evidence to support the allegation that the Complainant was the recipient of discriminatory action. Investigation also determined the non-discriminatory reason for the action taken appeared consistent with the Employer's business operations.
>
> Based on the above facts and pursuant to RCW 49.17.160, this investigation failed to demonstrate a violation and was closed.[5]

Michkowski appealed the decision to the director of L&I. The director affirmed the decision, finding that the record did not establish discrimination under RCW 49.17.160.

On July 5, 2013, Michkowski filed his retaliatory discharge claim against the county. The county moved for summary judgment. The trial court granted summary judgment and dismissed the claims. Michkowski appeals.

_____

5 CP at 323.

ANALYSIS

Michkowski contends that summary judgment was improper because there were issues of fact about whether the voting judges had knowledge of his complaint about bailiff safety, a fact material to establishing his retaliatory discharge claim. The record does not support this contention.

Summary judgment is proper when there is no genuine issue about any material fact and the moving party is entitled to judgment as a matter of law.[6] We construe the evidence in the light most favorable to the nonmoving party and review the ruling based solely on the record before the trial court at the time of the summary judgment motion.[7] A party challenging summary judgment may not rely upon mere allegations or denials, but must instead set forth specific facts showing the existence of a genuine issue for trial.[8]

RCW 49.17.160(1) prohibits the discharge of an employee "because such employee has filed any complaint . . . under or related to this chapter." Michkowski brought this WISHA retaliatory discharge action claiming that he was discharged for raising workplace safety issues relating to bailiff security in the courtroom. To establish a prima facie case for retaliatory discharge in this context, Michkowski must show

---

[6] CR 56(c).

[7] Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998); RAP 9.12, Washington Fed'n of State Emps., Council 28 v. Office of Fin. Mgmt., 121 Wn.2d 152, 163, 849 P.2d 1201 (1993).

[8] CR 56(e); McBride v. Walla Walla County, 95 Wn. App. 33, 36, 975 P.2d 1029, 990 P.2d 967 (1999).

(1) that he filed a complaint related to WISHA, (2) that he was discharged, and (3) that there is a causal connection between the complaint and the discharge.[9]

The parties concede that the first two elements have been established and only dispute causation. Michkowski contends that there are issues of material fact on the causation element, specifically whether the judges who voted to discharge him had actual knowledge that he made the complaint. We disagree.

To show the requisite causal link, the plaintiff must present sufficient evidence that the protected activity was the likely reason for the adverse employment action.[10] "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."[11]

As the county contends, the undisputed evidence in the record does not establish such actual knowledge. The record establishes only that Judge Bui was aware of Michkowski's complaint about bailiff safety and that she abstained from the vote to discharge him. All of the voting judges submitted declarations stating they were not aware Michkowski had raised this issue until after he filed his complaint with L&I about a week after they voted to terminate him. Indeed, in his L&I complaint, Michkowski admitted that he did not raise the issue with any other judge, stating, "I reported my concerns to my reporting authority, the Presiding Judge (not the court at large, the county, or any other authority . . . )."[12]

---

[9] See Wilmot v. Kaiser Aluminum, 118 Wn.2d 46, 68, 821 P.2d 18 (1991); Frisino v. Seattle School Dist. No. 1, 160 Wn. App. 765, 785, 249 P.3d 1044 (2011).

[10] Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982).

[11] Id.

[12] CP at 328.

While Michkowski is correct that he may rely upon circumstantial evidence and reasonable inferences, he cannot rely on mere speculation or a hunch that the decision makers knew of his exercise of protected conduct. It is pure speculation to infer that a person having knowledge of an employee's protected activity actually told the decision maker about the protected activity.[13] Michkowski offers no evidence to rebut the voting judges' sworn declarations that Judge Bui did not tell them about the memo before they voted to terminate him. Without such evidence, summary judgment was proper.[14]

Michkowski contends the record raises an issue of fact about whether the judges had actual knowledge. He first points to the first judges' meeting he attended when the issue of bailiff safety was addressed and the court voted to adopt the prosecuting attorney's recommendation to restrict the bailiffs' ability to carry firearms. But the record shows that he did not participate at all in that decision or otherwise voice his concerns about the issue. He also points to the fact that he and Judge Bui discussed his concerns during weekly meetings and that he raised the issue in his August 23, 2012 memorandum. But again, this evidence shows only that he raised the issue with Judge Bui, who did not vote.

Michkowski also points to the fact that Judge Bui forwarded the Bui-Michkowski e-mail exchange to Judge Ryan. But there is no evidence or inference that the safety memorandum was sent to Judge Ryan. The record does not show that any information about Michkowski's bailiff concerns were conveyed to Judge Ryan. Rather, the record

---

[13] See Clover v. Total Systems Services, 176 F.3d 1346, 1355 (11th Cir. 1999) (concluding that "'could have told' is not the same as 'did tell.'")

[14] See Mulhall v. Adhcroft, 287 F.3d 543, 552 (6th Cir. 2002) (where employee failed to take depositions to rebut denials of knowledge of employee's protected activity, summary judgment was proper).

shows only that Judge Bui forwarded Michkowski's e-mail and her response without the memorandum attachment. Neither of the e-mails refers to the content of the memo or mentions Michkowski's safety concerns.[15] Rather, the e-mail exchange reflects only Judge Bui's frustration with Michkowski's methods of keeping track of her receipt of his memos.

Michkowski next refers to two incidents in August 2012 involving bailiff security that were the subject of his memorandum. These both involved bailiff Larry Skinner, who reported that he was assaulted by a defendant on August 1, 2012, and was required to call 911 for assistance with a defendant on August 21, 2012. Michkowski asserts that "[c]ertainly all of the Judges on the Snohomish County District Court were aware that these two safety-related issues occurred."[16] But Michkowski puts forth no evidence that *he* in fact complained to the judges about these incidents. The record shows only that Skinner made the report on his own behalf.

Michkowski also points to L&I's notes from an interview with bailiff Bill Hawkins as documentation that Michkowski "has voiced safety concerns on several occasions, and has made recommendations."[17] But it appears that the notes refer to Hawkins, not Michkowski, stating:

> He was not well acquainted with the Complainant [Michkowski], and asserted that Complainant did not acknowledge him. He further asserted he never had a conversation with the Complainant about anything, he never asked about his job duties, job description, or any safety issues.

---

[15] His e-mail refers only to "our discussion earlier this afternoon regarding this topic." CP at 516.

[16] Br. of Appellant at 18.

[17] CP at 74.

*He* reportedly has voiced safety concerns on several occasions, and has made recommendations. He stated in general he feels safe in performing his duties. Additionally, he suffered no adverse employment action for voicing his concerns.[18]

In any event, the notes do not establish actual knowledge of the voting judges. Absent any evidence of actual knowledge, Michkowski fails to establish a prima facie case of retaliatory discharge. Accordingly, summary judgment was proper.[19]

Michkowski further argues that even if the evidence does not establish that the voting judges had actual knowledge of his complaint about bailiff safety, they should be bound by Judge Bui's knowledge under agency principles. This argument is without legal basis. As the county correctly notes, Michkowski confuses knowledge of workplace safety issues in the context of the county's duty to its employees with the burden of proof in a retaliatory discharge claim based on a complaint of workplace safety.

Under well-settled agency principles, a principle is charged with notice to an agent when the agent receives the notice while acting in the scope of his or her authority of an agent.[20] But this does not apply in a retaliatory discharge. Michkowski relies on Kimbro v. Atlantic Richfield Company, where an employee was ultimately fired for absenteeism caused primarily by a disability, of which management claimed it was unaware despite the immediate supervisor's actual knowledge of the condition.[21]

---

[18] Id. (emphasis added).

[19] See Mulhall, 287 F.3d at 552 (failure to produce any evidence to rebut denials of knowledge of employee's protected activity cannot defeat summary judgment); Newton v. Meijer Stores Ltd. P'ship, 347 F. Supp. 2d 516, 524 (N.D. Ohio 2004) (absent "specifics facts" establishing actual knowledge, summary judgment was proper).

[20] Kimbro v. Atlantic Richfield Co., 889 F.2d 869, 876 (9th Cir. 1989).

[21] 889 F.2d 869, 874 (9th Cir. 1989).

The court held that because the immediate supervisor had a duty to report this information to management, this created a duty of the employer to accommodate the employee's disability.[22] Thus, for purposes of liability in this context, the supervisor's knowledge was imputed to management.[23] But in Kimbro, there was no claim of retaliatory discharge; rather, the issue of the employer's imputed knowledge was relevant only to the claim of the employer's failure to make reasonable accommodations for an employee's disability. Kimbro did not hold that such knowledge is imputed to the employer for purposes of establishing a retaliatory discharge claim.[24]

Here, the county is not claiming that it had no duty to respond to bailiff safety issues once raised by Michkowski. In fact, the county concedes it has such a duty as evidenced by the L&I citations for workplace safety violations. But it does not follow that this duty imputes knowledge to the judges who voted to discharge him for purposes of establishing a retaliatory discharge claim when there is no evidence those judges had actual knowledge of his complaint. This is precisely why L&I found the county in violation of workplace safety standards, but dismissed Michkowski's retaliatory discharge claim based on his complaint about these safety violations. As one court has recognized, "It simply defies logic to argue that [an employer's] 'real intention' was to fire [an employee]

---

[22] Id.

[23] Id. at 872-73.

[24] See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1184 (11th Cir. 2005) (distinguishing Kimbro in a discriminatory discharge case: "Kimbro plainly is not on point here . . . . [T]hat case was about reasonable accommodations, not discriminatory discharge.").

'because of' a disability [the employer] knew nothing about."[25] The knowledge of Judge Bui is not imputed to the judges who voted to terminate Michkowski.

Without evidence of actual knowledge, Michkowski fails to establish the causal connection necessary to make out a prima facie case of retaliatory discharge. Accordingly, we need not reach his further contention that there was sufficient evidence that the judges' stated reasons for his discharge were a pretext. As discussed above, the employer's motivation for the discharge only becomes an issue after a prima facie case is established.

We affirm.

WE CONCUR:

Trickey, J

Spearman, C.J.

---

[25] Id.